**In re Murray L. DEUTCHMAN.**

**Murray L. Deutchman**

v.

**Internal Revenue Service**

**Civ.A. No. DKC 98–841.**

United States District Court,
D. Maryland.

June 9, 1998.

Robert B. Scarlett, Heneson & Scarlett, Baltimore, MD, for appellant.

Gerald Alan Role, U.S. Department of Justice, Washington, DC, for appellee.

## MEMORANDUM OPINION

CHASANOW, District Judge.

In this appeal from the Bankruptcy Court, Murray L. Deutchman, Appellant, challenges the determination that confirmation of his Chapter 13 plan in 1994 did not release or extinguish the IRS lien against his residence upon payment of an amount less than that claimed for back taxes. The Bankruptcy Court found that *Cen–Pen Corp. v. Hanson,* 58 F.3d 89 (4th Cir.1995), was dispositive and this court agrees. The judgment will be affirmed.

### I. Background

The amended plan, confirmed on June 15, 1994, characterized the tax claims of governmental units, including the IRS, as either Class II or Class III, depending on the priority status or date. Article V of the Plan provided:

> Class II. The Debtor's Class II priority creditors shall be paid directly by the Debtor their Allowed Priority Claims, which will not include the claim of such creditors as such claims are Class III claims, in full and in cash over a five (5) year term counting from the date of the tax assessment, in monthly installments. The holder of each such claim shall receive such deferred cash payments over a period of five (5) years in the amount equal to their Allowed Claim, plus simple interest

at the lowest rate permitted by the respective taxing priority creditor. In addition, the Priority Creditors shall receive an additional $5,000.00. The Debtor's Class II priority creditors shall not receive that portion of their claim described in the treatment of the Debtor's Class III creditors. The Debtor shall pay the monies owed to the Class II creditors to the Trustee for disbursement by the Trustee. **Upon payment of all of the Allowed Claims due any one of the Class II creditors, the liens place [sic] upon the Debtor's real property by said Class II creditor shall be considered released and of no effect, including those liens to protect the debt obligations owed to the Class III creditors.**

(emphasis added).

Appellant argues, as he did before the Bankruptcy Court, that this provision had the effect of releasing the IRS lien. Relying primarily on *Cen–Pen,* the Bankruptcy Court held that the plan did not expressly "provide for" the secured claim and thus did not extinguish the IRS lien.

### II. Analysis

■ At issue is the apparent conflict between the language of 11 U.S.C. § 1327(a) ("the provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan") and the Fourth Circuit decision in *Cen–Pen* ("Unless the debtor takes appropriate affirmative action to avoid a security interest in property of the estate, that property will remain subject to the security interest following confirmation.")

Appellant attempts to distinguish *Cen–Pen,* without success.[1] The plan in *Cen–Pen* provided for cancellation of the lien for failure to file a proof of claim, whereas here the debtor acknowledged the debt to IRS, albeit without specifically recognizing the lien. Appellant asserts that there was, thus, no need for an adversary hearing to cancel the lien.

---

**1.** The conflict between *Cen–Pen* and *In re Penrod,* 50 F.3d 459 (7th Cir.1995) is discussed in "Lien Avoidance in Chapter 13," 15 OCT Am.Bankr. Ins.J. 16 (1996).

What he fails to perceive, however, is that disputing the value of the lien, as he did, similarly cannot be resolved in the confirmation hearing, but requires more formal proceedings. The distinguishing features of this case do not remove it from the reach of *Cen–Pen.* Merely securing confirmation of the plan did not extinguish the IRS lien.

The court explained in Cen–Pen:

[T]he general rule [is] that liens pass through bankruptcy unaffected. *See, e.g., Dewsnup v. Timm,* 502 U.S. 410, 418, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). A bankruptcy discharge extinguishes only *in personam* claims against the debtor(s), but generally has no effect on an *in rem* claim against the debtor's property. See *Johnson v. Home State Bank,* 501 U.S. 78, 84, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991). For a debtor to extinguish **or modify** a lien during the bankruptcy process, some affirmative step must be taken toward that end. *See, e.g., Lee Servicing Co. v. Wolf (In re Wolf),* 162 B.R. 98, 107 n. 14 (Bankr. D.N.J.1993); *In re Glow,* 111 B.R. 209, 221 (Bankr.N.D.Ind.1990). Unless the debtor takes appropriate affirmative action to avoid a security interest in property of the estate, that property will remain subject to the security interest following confirmation. *In re Honaker,* 4 B.R. 415, 417 (Bankr.E.D.Mich.1980). The simple expedient of passing their residence through the bankruptcy estate could not vest in the Hansons a greater interest in the residence than they enjoyed prior to filing their Chapter 13 petition. *Id.*

*Cen–Pen,* 58 F.3d at 92–93 (emphasis added).

*III. Conclusion*

The judgment of the Bankruptcy Court will be affirmed. A separate order will be issued.